## *In re* ALLISON'S ESTATE.

(*Supreme Court, General Term, Second Department.* December 10, 1890.)

TESTAMENTARY CAPACITY—EVIDENCE—GIFTS.

　　Testator, whose will disposed of a large amount of property specifically, but contained no general residuary clause, had, during the last four years of his life, given to his son checks for sums of money, aggregating almost $70,000. On the stubs of most of the checks were written, in testator's handwriting, statements that they were "to assist" or "help" the son. Testator was then living with his son, and had lived with him over 60 years. He was about 90 years of age, but, although there was proof of loss of memory, that he forgot payments, and that he was garrulous on certain subjects, he did his own business, attending properly to complicated transactions, and he was never irrational. Testimony of the son's wife, as a witness to the delivery of the checks on repeated occasions, was that they were voluntarily given, generally with a statement that the son was welcome to them; that he gave them to help the son, and wanted him to have the money in testator's life-time. He made similar gifts of checks to a grandson within the same period. *Held*, that findings of the surrogate on the settlement of the executor's accounts that testator was of sound mind, and that the checks to the son were gifts to him, were supported by the evidence. DYKMAN, J., dissenting.

Appeal from surrogate's court, Rockland county.

Application by Brewster J. Allison, Walter Tomkins, and William Knight, executors of George S. Allison, deceased, for a final settlement of their accounts as such executors. Objections to the accounts presented were filed by George A. McMahon and others, grandchildren of the deceased. From the decree of the surrogate thereon, said contestants appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Calvin Frost,* for appellants. *Garrett Z. Snider,* for respondents.

BARNARD, P. J. George S. Allison died at a very advanced age, in 1884, leaving a last will and testament. By this will a large amount of property is specifically disposed of, and there is no general residuary clause. The evidence shows that the deceased gave checks to his son Brewster J. Allison in his life-time for amounts which aggregate $68,734.34. These checks begin with the date of April 2, 1880, and end June 5, 1884. The testator died in August, 1884. The question is whether the sums represented by these checks were gifts. The testator lived with his son, and at the commencement of the list of checks, etc., was about 90 years of age. He did his own business until after the date of the last check. He had lived with this son over 60 years. The larger part of the stubs, which were all in testator's handwriting, states that the checks were given to Brewster J. Allison "to assist him" and "to help him." One states that the check was given to help him at a birthday party. These checks, in all amounting to $550, between October, 1880, and April, 1881, are stated to be loans; and one in October, 1883, "to B. J. Allison, present $400." The principal issues before the surrogate was as to the capacity of the testator between 1880 and the time of his death. The proof failed to show incapacity. There was a loss of memory. He forgot pay-

ments. He was garrulous on his services as a soldier in the war of 1812, but in October, 1882, he could write a complicated receipt, and on the same day enter the receipt of the money and check, stating accurately the amount of money, and the amount of the check, and whose check it was, on his cash-book, all in his own handwriting. He never was irrational. The oral evidence of Brewster J. Allison's wife supports the gifts. She witnessed the delivery of the checks on repeated occasions. They were voluntarily given, and generally accompanied with a statement that his son was welcome to the checks, and that, if he was not, he would not have given them to him; that he gave the sums to help his son; and that he wanted him to have the money in his life-time. He made gifts of checks to his grandson George S. Allison to help him build a house between September, 1883, and April, 1884. In July, 1884, he attended as a director of the Haverstraw Bank, and got credit at the store of J. S. Lane & Co., during the summer of 1884, got the bills, and "he would look at one and pay it right then."

The conclusion of the surrogate as to the sanity of testator, and as to the gifts of the moneys, is fully supported by the evidence, and the decree should therefore be affirmed, with costs.

PRATT, J., concurs. DYKMAN, J., dissents.